UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
SHARON O'CONNELL,

**REPORT AND**
**RECOMMENDATION**

- against -

03 CV 6532 (ERK)

JOINT INDUSTRY-ENGINEERS UNION
LOCAL 30 PENSION TRUST FUND and
PLAN ADMINISTRATOR OF THE
LOCAL 30 PENSION FUND,

Defendants
-------------------------------------------------------X

On December 31, 2003, plaintiff Sharon O'Connell commenced this action against defendants Joint Industry-Engineers Union Local 30 Pension Trust Fund (the "Fund") and the Plan Administrator of the Fund (the "Administrator"), seeking disclosure of certain documents that she believes she was entitled to receive, as well as penalties, pursuant to Sections 502, 503 and 104 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1133 and 1024.

On November 1, 2004, plaintiff filed a motion for summary judgment; defendants cross-moved for summary judgment on November 15, 2004. Both motions were referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND

The fund is a multi-employer pension trust fund organized under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141. (Kelly Aff. ¶ 1).[1] The Plan is jointly administered by an equal number of union and employer trustees (the "Board"), which serves as the Plan Administrator and Plan Sponsor as defined in ERISA, 29 U.S.C. § 3(16)(A) and 1002(16)(B). (Id.)

Plaintiff alleges that she was employed at Starrett City as an apprentice with Union Local 30 Operating Engineers, beginning in June of 1992 and continuing until 1995, when she was appointed to the position of Operating Engineer. (Id. ¶ 6; Quesada Aff.[2] ¶ 2).

In December 2000, plaintiff requested information from the Fund relating to her pension. (Kelly Aff. ¶ 6). The Executive Director of the Fund responded to plaintiff's request by letter dated December 21, 2000 and provided plaintiff with her Pension and Vesting Credits for the years 1995 through 2000. (Id. ¶ 7). She was also given a statement indicating that her benefits were vested and detailing the total contributions received on her behalf since March 1, 1991. (Id.) The letter further informed plaintiff of the Fund's position that she was not entitled to pension credit during the period of her apprenticeship. (Quesada Aff. ¶ 2, Ex. A). According to the Fund, under the collective bargaining agreement ("CBA") between Local 30 of the International Union of Operating Engineers (the "Union") and Starrett City, there was no provision for the collection of pension contributions for apprentices. (Kelly Aff. ¶ 6). The Fund

---

[1] Citations to "Kelly Aff." refer to the Affidavit of Frank L. Kelly, Executive Director of the Fund (undated and unsigned), filed November 15, 2004.

[2] Citations to "Quesada Aff." refer to the Affirmation of Victoria Quesada, Esq., dated March 16, 2004 (unsigned).

2

provided plaintiff with work papers from the Funds Internal Auditor, Thomas Mooney, indicating that no contributions had been collected or were due from Starrett City under the CBA for apprentices. (Id. ¶ 7).

On May 7, 2003, plaintiff met with the Executive Director of the Fund and with a Staff Assistant to the Fund Internal Auditor, Andrew Kobel. (Id. ¶ 10). Plaintiff brought a copy of the CBA with her to the meeting and she discussed with the Fund representatives the absence of any provision in the CBA for apprentices during the period from May 1991 through April 1994.[3] (Id. ¶ 10). Plaintiff was told that the accepted interpretation of the CBA was that contributions were not required for apprentices. (Id. ¶ 11). She was further told that her pension rights had not been negotiated away by the Union; instead, apprentices were not covered by the pension plan because no contributions were required to be made on their behalf. (Id.)

However, plaintiff received from the Management Office a different version of the CBA for the period May 1, 1991 through April 30, 1994. (Pl's. 56.1 Stmnt. ¶ 3). The version received from the Management Office contained no mention of the fact that apprentices were not entitled to pension credit, while the Union Office version of the CBA contained an initialed, handwritten note that stated, "–Welfare Only – per J.A. – 3-25-92." (Quesada Aff. Ex. C). According to defendants, "J.A." refers to John T. Ahern, who was the Local 30 Business Agent at the time the CBAs were negotiated. (Kelly Aff. ¶ 13).

Plaintiff subsequently retained counsel who sent a letter to the Plan Administrator, dated June 12, 2003, appealing the decision to deny plaintiff pension credits during her apprenticeship.

---

[3]While Kelly's Affirmation states the dates at issue to be "5/7/03-4/30/94" (Kelly Aff. ¶ 10), the Court interprets Mr. Kelly to be referring to the CBA which was in effect from May 1, 1991 to April 30, 1994. (See Pl's. 56.1 Stmnt. ¶¶ 3, 18).

(Quesada Aff. ¶¶ 3, 4). Prior to perfecting the appeal, counsel requested an opportunity to review certain documents pursuant to Department of Labor Regulation § 2560.503-1. (Id. ¶ 4). These documents included: (1) the Plan documents in effect from 1992-1995; (2) the Summary Plan descriptions in effect during the period 1992-1995; (3) copies of all documents relied upon by the Plan in determining that no pension contributions were due during plaintiff's apprenticeship; and (4) documents reflecting any change in pension credits for apprentices and opinions of counsel relating to the legality of denying credits for apprentice time. (Id. ¶ 4, Ex. D).

Plaintiff asserts that even though the letter from counsel was sent by certified mail and duly signed for, counsel received no response to the letter. (Id. ¶ 5). A second letter was then sent on August 26, 2003, enclosing a copy of the June 12, 2003 letter and advising the Plan Administrator of the penalties for noncompliance under ERISA. (Id., Ex. E).

By letter dated August 28, 2003, the plaintiff received a copy of the 1989 Plan Document and Summary Plan Description, the 1993 Plan Document and Summary Plan Description, and the Declaration of Trust in response to plaintiff's counsel's first and second requests. (Id. ¶ 6, Ex. F). The August 28, 2003 letter invited plaintiff to contact counsel for the Fund to obtain information responsive to the third and fourth of plaintiff's requests: the documents relied upon by the Fund in determining that no pension credit was due, and the documents and counsel's opinions reflecting any change in apprentice's pension credit. (Id., Ex. F).

In response, plaintiff sent a letter dated September 3, 2003, again requesting compliance with her third and fourth requests, declining to seek the information from counsel, and reminding the Plan Administrator of its fiduciary obligations under ERISA which makes the Administrator responsible for compliance with document requests. (Id. ¶ 7, Ex. G). The Plan Administrator

4

then sent a letter dated October 1, 2003, advising plaintiff that new counsel had been retained and asking plaintiff to "'bear with them'" until new counsel was "'up to speed.'" (Id. ¶ 8 (quoting Ex. H)).

Plaintiff's counsel avers that she spoke with Andrew Kobel, Staff Assistant to the Fund Internal Auditor, and told him that she could find no support in either the Plan documents or the CBA for the rule denying pension credit to apprentices. (Id. ¶ 9). According to plaintiff's counsel, Mr. Kobel indicated to her that they were "'having trouble'" finding documentation for the rule. (Id.)

When plaintiff continued to receive no response to her letter, counsel sent a fourth letter dated October 30, 2003, threatening to file suit if no response was received in thirty days. (Id. ¶ 10, Ex. I). After sixty days went by with still no response, plaintiff commenced this action on December 31, 2003, to enforce her right to obtain certain documents from the Plan Administrator to determine whether she is entitled to benefits under the plan. (Id. ¶ 11).

Following joinder of suit, this Court held an initial conference with the parties on March 30, 2004. At that time, plaintiff's counsel produced the two versions of the CBA that her client had previously received from the Union and from management. (Pl's. 56.1 Stmnt. ¶ 12). Defendants' counsel produced a third version of the CBA at the conference; this version was different from both of plaintiff's versions in that the Fund's version contained typewritten changes denying pension credit for apprentices. (Id.)

In an effort to resolve which of the three versions was the operative CBA, the Court directed plaintiff to serve discovery requests. (Id.; Minute Entry Mar. 30, 2004). In response to plaintiff's April 8, 2004 First Set of Interrogatories and Document Requests, seeking the

identification of the final operative version of the CBA, defendants had indicated that the 1994-1997 CBA was the first CBA to permit pension credits for apprentices and that the Fund had relied on the 1991-1994 and 1994-1997 CBAs in determining that plaintiff was not entitled to pension credit. (Id., Exs. J, N). Defendants also attached "a summary of the Collective Bargaining Agreement." (Id. ¶¶ 13-14, Ex. K).

On June 3, 2004, this Court issued an Order requiring defendants to "provide a complete copy of the operative Collective Bargaining Agreement for the period at issue with a certification from the responsible person at the Fund, certifying that the document produced was in fact the operative CBA." (Minute Entry June 3, 2004; Pl's. 56.1 Stmnt. ¶ 16, Ex. M). Defendants responded to the Court's Order by producing a copy of the CBA for 1991-1994 which did not contain either the handwritten or the typed alterations. (Id. ¶¶ 17-18, Ex. M).

Plaintiff now moves for summary judgment on her claim that defendants timely failed to provide the documents upon which they relied in denying plaintiff pension credits for her apprenticeship period. (See Pl's. Mem. at 4-5).[4] Plaintiff argues that defendants acted in bad faith in failing to promptly comply with their disclosure obligations, and accordingly, plaintiff seeks the maximum statutory penalty of $110.00 per day, commencing 33 days after plaintiff's initial request on June 12, 2003 until the receipt of the CBA on June 25, 2004. (See id. at 10-12).

Defendants cross-move for summary judgment, arguing that plaintiff received all the documents she was entitled to under Section 104(c) of ERISA prior to the lawsuit, 29 U.S.C. § 1023(c), and that her inquiry regarding her pension credits is not a claim for benefits. (Defs.'

---

[4]Citations to "Pl's. Mem." refer to plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, filed September 17, 2004.

Mem. at 3-4).[5] Defendants also argue that there has been no adverse benefit determination that would require the Fund to satisfy plaintiff's request for documents under Section 503 of ERISA. 29 C.F.R § 2530.503-1. (Defs.' Opp. at 4-7). Finally, defendants argue that what plaintiff is complaining about is an interpretation of the CBA, and since the Fund is not a party to the CBA, it must rely on the interpretation of the parties. (Id. at 8-10).

## DISCUSSION

### A. Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985), the court should not grant summary judgment unless it is clear that all of the elements have been satisfied. See Auletta v. Tully, 576 F. Supp. 191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574,

---

[5]Citations to "Defs.' Mem." refer to defendants' Memorandum in Support of Defendants' Motion for Summary Judgment, dated September 17, 2004. Defendants also filed a separate Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, dated October 5, 2004 ("Defs'. Opp.").

587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading. . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. A party opposing summary judgment may not "merely. . .assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The party must set forth "concrete particulars" showing that a trial is necessary. Nat'l Union Fire Ins. Co. of Pittsburgh v. Deloach, 708 F. Supp. 1371, 1379 (S.D.N.Y. 1989). Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48 (emphasis in original).

In reversing a grant of summary judgment, the Second Circuit noted that the "'[t]rial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.'" Quaratino v. Tiffany & Co., 71 F.3d 58, 65 (2d Cir. 1995) (quoting Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)).

B. ERISA Disclosure Requirements

In moving for summary judgment, plaintiff relies on two separate disclosure provisions under ERISA. Section 104(b)(4) provides in relevant part:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. . . .

29 U.S.C. § 1024(b)(4). In Firestone Tire & Rubber Co. v. Bruch, the Supreme Court recognized that in enacting this disclosure provision, Congress was attempting to "ensur[e] that 'the individual participant knows exactly where he stands with respect to the plan.'" 489 U.S. 101, 118 (1989) (quoting H.R. Rep. No. 93-533, p.11 (1973)).

Plaintiff is a "participant" as defined in 29 U.S.C. § 1002(7)[6] and thus is entitled to request production of documents under this provision. However, Section 104(b)(4) requires disclosures limited to the specific documents listed in the statute. 29 U.S.C. § 1024(b)(4). See Board of Trustees of the CWA\ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 143 (2d Cir. 1997) (interpreting the language "'other instruments under which the plan is established or operated' as being related to the categories of documents specifically listed in § 104(b)(4)[,] further support[ing the court's] view that that clause was meant to refer to formal documents that govern the plan, not to all documents by means of which the plan conducts

---

[6]Section 1002(7) of ERISA defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit. . . ." The Second Circuit has held that this definition includes "either employees in, or reasonably expected to be in, currently covered employment or former employees with a colorable claim to vested benefits." Saladino v. I.L.G.W.U. Nat'l Retirement Fund, 754 F.2d 473, 476 (2d Cir. 1985).

9

operations"); see also Ames v. American Nat'l Can Co., 170 F.3d 751, 758-59 (7th Cir. 1999); Hughes Salaried Retirees Action Comm. v. Administrator of Hughes Non-Bargaining Retirement Plan, 72 F.3d 686, 691 (9th Cir. 1995) (en banc) (finding that "§ 104(b)(4) requires the disclosure of only the documents described with particularity and 'other instruments' similar in nature").

Plaintiff also seeks disclosure under Section 503 of ERISA. This provision, however, applies only where there has been an "adverse benefit determination" and the participant seeks disclosure in order to pursue a review of that determination. See 29 C.F.R. § 2560.503-1(h)(2)(iii); 29 U.S.C. § 1133; Burke v. Kodak Retirement Income Plan, 366 F.3d 103, 107, 109 (2d Cir. 2003), cert. denied, 540 U.S. 1105 (2004); Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 915-16 (2d Cir.), cert. denied, 459 U.S. 1039 (1982). Under those circumstances, a participant may request disclosure of "relevant" documents as appropriate to the claims procedure. 29 C.F.R. § 2560.503-1(h)(2)(iii). Pursuant to regulations issued by the Department of Labor, a claims procedure "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination" unless it meets certain criteria. 29 C.F.R. § 2560.503-1(h)(2). Among other things, the plan must:

> Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section.

29 C.F.R. § 2560.503-1(h)(2)(iii). Paragraph (m)(8) defines "relevant" as any "document, record, or other information [which, among other factors, . . .] was relied upon in making the benefit determination." 29 C.F.R. § 2560.503-1(m)(8).

10

C. Application

Plaintiff argues that defendants violated both disclosure provisions by failing to provide documents responsive to the third and fourth requests set out in her counsel's letter. (Pl's. Mem. at 6-7). She argues that despite the fact that defendants conceded in their Answers to Interrogatories that they relied on the CBAs for 1991-1994 and 1994-1997, it took them more than a year to provide plaintiff with a copy of the final operative 1991-1994 CBA upon which they relied in denying plaintiff pension credit. (Id. at 6).

Defendants contend that they properly responded to plaintiff's request by providing the documents responsive to her first and second requests. Defendants argue that plaintiff's third and fourth requests do not specify documents required to be disclosed under Section 401(b)(4), but rather represent "catchall discovery requests not within the scope of the statute." (Defs.' Mem. at 3). To the extent that plaintiff complains that defendants failed to produce the CBA in response to her requests, defendants argue that she already had those CBAs in her possession and her requests did not specifically ask for the CBA. (Id. at 4). Defendants argue the "statute does not require the Fund to be a mind reader or to decode a participant's general catchall request into specific documents." (Defs.' Opp. at 3).

1. Section 104(b)(4) of ERISA

Clearly, had plaintiff requested a copy of the CBA, plaintiff would have been entitled to receive it under Section 104(b)(4) of ERISA. Section 104(b)(4) specifically lists the "bargaining agreement" as one of the documents subject to disclosure. 29 U.S.C. § 1024(b)(4). It is undisputed that prior to making her request on June 12, 2003, plaintiff was in possession of at

11

least one, if not two, copies of the CBA. (Pl's. Mem. at 9; Defs.' Mem. at 3). Indeed, even before she retained counsel, plaintiff met with the Fund's Executive Director and a Staff Assistant, who discussed the CBA with plaintiff as well as the absence of any provision in the CBA for pension credits to be earned by apprentices. (See Defs.' Mem. at 3, 4; Kelly Aff. ¶¶ 6, 10).

Thus, had plaintiff had some concern as to whether she had the operative CBA or not, plaintiff could, in her counsel's letter, have made a specific request for the operative CBA, and defendants would have been required to produce it. However, instead, plaintiff requested "all documents relied upon by the defendants in their determination that plaintiff was not entitled, in whole or part, to pension credit during the period of her apprenticeship." (Pl's. Mem. Ex. J, Plaintiffs' [sic] First Set of Interrogatories and Document Requests, dated April 8, 2004, Interrogatory 5). Although plaintiff is correct that the CBA was one of the documents relied upon by the Fund in denying apprentice pension credits, the Court finds the language of her request to be overly vague and not sufficiently specific to trigger production of the CBA, particularly when the Fund was aware that plaintiff was already in possession of the CBA.

Moreover, to the extent that plaintiff complains that the Fund failed to produce the final operative CBA until after ordered to do so by this Court and thus she did not know which agreement to challenge (Pl's. Mem. at 7, 11), the Court finds otherwise. The Fund, early on, had produced a copy of the CBA containing a handwritten notation from a Union representative indicating that pension credits were not to be accumulated for apprentices. (See Quesada Aff. Ex. C). The Union had informed the Fund that contributions made on behalf of Apprentices would only be allocated to the Welfare Fund, not to the Pension Fund (Defs.' Mem. Ex. E; Kelly

12

Aff. ¶ 6), and Jack Ahern, the Business Agent of the Local who had negotiated the CBAs, initialed the CBA to indicate those instructions. (See Kelly Aff. ¶ 13).

Since the Fund is not a signatory to the CBA, which is an agreement between the employer and the Union, the Fund is obliged to abide by the parties' interpretation of the agreement. The Fund explained to plaintiff that it was constrained to follow the parties' interpretation and provided her with additional documents demonstrating that, in accordance with that understanding, no contributions had been paid and no credits had accumulated for apprentices during the period in question. (Kelly Aff. ¶¶ 7, 11). Thus, by providing plaintiff with the initialled CBA indicating Ahern's interpretation of the CBA insofar as pension contributions for apprentices were concerned, the Fund had in fact supplied plaintiff with the document relied on by the Fund in denying her pension credit.

Thus, since plaintiff had the copy of the CBA relied upon by the Fund prior to the commencement of this action and her subsequent requests from counsel did not specifically request production of the CBA, the Court concludes that the Fund did not violate the disclosure obligations of Section 104(b)(4) of ERISA.

### 2. Section 503 of ERISA

Plaintiff also argues that even if her third and fourth requests did not trigger disclosure of the CBA under Section 104(b)(4) of ERISA, she was nonetheless entitled to production of responses to her requests under Section 503 of the Act, and thus, she is entitled to statutory penalties based on the Fund's failure to comply with Section 503. (Pl's. Mem. at 3-4).

However, Section 503 only applies to requests for disclosure in the context of an "adverse

benefit determination." 29 C.F.R. § 2560.530-1(h); 29 U.S.C. § 1133. Here, plaintiff simply inquired as to the status of her pension credits and received, in response, a statement detailing what credits had been applied. The statement she received specifically stated that the statement was "for information only, and does not guarantee the benefits or correctness of information." (Kelly Aff. Ex. C, p. 2). The statement was explicit in stating that the "Pension Credits shown here have not been approved and are subject to modification and/or approval by the Board of Trustees at the time that a formal application for Pension is reviewed."

Despite the fact that there was no determination of benefits here, much less an "adverse benefit determination," plaintiff argues that under Carey v. International Brotherhood of Electrical Workers Local 363 Pension Plan, 201 F.3d 44, 47-49 (2d Cir. 1999), a cause of action accrues under Section 503 "upon the 'clear' repudiation of the claim for benefits regardless of whether a formal benefits application has been filed." (Pl's. Mem. at 5). Plaintiff contends that under Carey, a participant need not "wait until they retire to challenge an adverse benefit determination to avoid a possible statute of limitations problem." (Id.)

Plaintiff's reliance on Carey in this instance is misplaced. In Carey, the plaintiff had inquired as to the status of his pension service credits and the Fund Administrator had informed the plaintiff that he had lost his pension service credits due to a break in service. Carey v. International Brotherhood of Electrical Workers Local 363 Pension Plan, 201 F.3d at 45-46. Plaintiff appealed to the Board of Trustees of the Fund, which issued a letter notifying the plaintiff that the Board had considered plaintiff's appeal from the decision by the Fund Administrator, and had "upheld the decisions of the Fund Administrator. . . ." Id. at 46. Upon review, the court found the letter issued by the Board of Trustees to have been "a clear

14

repudiation" of benefits. Id. at 49. Accordingly, the court dismissed the action because it had been filed more than six years after the Trustees had issued the letter and thus was barred by the statute of limitations. Id.

In its ruling, the court in Carey focused not on the fact that there was no formal application for benefits, but rather on the fact that the Board of Trustees' letter was a clear repudiation of Carey's right to benefits, and thus constituted an adverse benefit "decision." See id. at 46. While the instant case is similar to Carey in that plaintiff here made no formal application for benefits, this case is distinct in that the letter received by O'Connell from the Fund was explicitly not a determination of benefits, but was clearly "for information only." (Kelly Aff. Ex. C, p. 2). The letter stated that "Pension Credits shown here have not been approved and are subject to modification and/or approval by the Board of Trustees at the time that a formal application for Pension is reviewed." (Id.) Thus, unlike the plaintiff in Carey, who had received a letter based on the Board's review, here the Board had not conclusively made a decision as to benefits, and thus, no prerequisite "adverse benefit determination" had been rendered to trigger the disclosure provisions of Section 503.[7]

Moreover, even if the Court were to conclude that the disclosure provision of Section 503 applied, the Court has already concluded that the Fund produced the relevant CBA prior to the commencement of suit (see discussion supra pp. 11-13), and, therefore, no penalties would be

---

[7]The Fund argues that if an inquiry such as plaintiff's here was sufficient to trigger the disclosure provisions of Section 503, the Fund, which "receives hundreds" of such inquiries on an annual basis would be "inundated with appeals severely impacting their ability to govern the Plan. (Defs.' Mem. at 7). Indeed, if plaintiff's interpretation of Carey were adopted, many plan participants could unwittingly allow the statute of limitations to run and jeopardize their right to bring an action within the statute of limitations. (Id.)

15

appropriate.

## CONCLUSION

Accordingly, it is respectfully recommended that the plaintiff's motion for summary judgment be denied, and that defendants' cross motion for summary judgment be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the ECF system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
 November 27, 2005

Cheryl L. Pollak
United States Magistrate Judge